UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JUAN REYES SANTOS,

Petitioner,

v.

THOMAS GILES, et al.,

Respondents.

Case No. 5:26-cv-06673-PD

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE**

**A# 222-570-779**

Juan Reyes Santos ("Petitioner") filed a counseled, verified Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. Dkt. No. 1. The Court has considered the Petition, Respondents' answer and exhibit, and Petitioner's reply. Dkt. Nos. 1, 9, 11.

## I. Background

Petitioner is a native and citizen of Mexico who entered the United States in 2023 without being admitted and has lived in the country continuously since then. Dkt. No. 1, Petition ¶¶ 1, 16. Petitioner has never been arrested or charged with any crime. *Id.* ¶ 18. Before October 9, 2026, Petitioner was not in immigration custody and was not subject to conditions of release. *Id.* ¶ 17. Petitioner lives in Jurupa Valley, California. *Id.* ¶ 19. He

works and supports his family. *Id.* Petitioner is the father of daughters who are seeking asylum in the United States. *Id.* ¶ 20. He helps care for and support them, and they depend on him while their asylum claims are pending. *Id.* Petitioner's brother, J. Guadalupe Reyes Santos, has lived in Jurupa Valley for years with his wife and four United States citizen children. *Id.* ¶ 21. Petitioner's family is rooted in the community. *Id.*

On October 9, 2026, shortly before 5:35 a.m., Petitioner was riding to work with his brother in the family's GMC, on their usual route, when three vehicles of masked immigration officers stopped them in Jurupa Valley. *Id.* ¶¶ 2, 22. The officers asked both men for photo identification, and Petitioner identified himself. *Id.* ¶ 23. The officers then demanded documents. *Id.* ¶ 24. When Petitioner and his brother took a moment to locate their documents, the officers pulled both men out of the car, took their wallets, and searched them. *Id.* The officers did not show Petitioner a warrant or give him any document at the scene. *Id.* ¶ 25. No warrant, notice, or other paper concerning the arrest has been provided to Petitioner or his family. *Id.* Petitioner states on information and belief that no administrative warrant for his arrest existed when he was seized, and officers did not know who Petitioner was before they stopped the car. *Id.* Petitioner states that before the arrest, the officers did not ask him about his home, family, work, or how long he had lived in the United States. *Id.* ¶ 26.

According to Petitioner, the officers made no individualized, prearrest determination that Petitioner was likely to escape before a warrant could be obtained. *Id.* ¶ 26. Petitioner states he was on his way to work, in the family car, on his regular route, and identified himself when asked. *Id.* He did not flee, resist, or refuse to identify himself. *Id.*

Petitioner's brother was also detained by immigration officers that day. *See Reyes Santos v. Giles*, No. 5:26-cv-06410-PD, Dkt. No. 13 (C.D. Cal. Nov.

13, 2026). In Petitioner's brother's habeas case, which arises from the same stop, Respondents filed the Form I-213, Form I-200, and Notice to Appear they prepared for Petitioner's brother. *See Reyes Santos*, Dkts. 9-1, 9-2, 9-3. The Court takes judicial notice of those filings. *See* Fed. R. Evid. 201(b).

The I-213 states that officers were conducting an operation to arrest "ARCE, Alberto," and stopped the vehicle after seeing "an individual matching the physical appearance and description of ARCE." Dkt. 9-1 at 2. However, the I-213 records no description. *Id.* Neither Petitioner nor his brother is Alberto Arce.

Petitioner has been detained since October 9, 2026. *Id.* ¶ 34. Petitioner received no notice and no opportunity to be heard before he was taken into custody. *Id.* ¶ 35. Petitioner has not been provided with any hearing. *Id.* ¶ 36. No immigration officer has made an initial custody determination under 8 C.F.R. § 287.3(d) or considered him for release under 8 C.F.R. § 236.1(c)(8), and he has received no Form I-286 Notice of Custody Determination. *Id.* He has had no bond hearing, no custody redetermination hearing before an immigration judge, and no other hearing before any neutral decisionmaker on whether his detention is justified. *Id.* No official has found that Petitioner poses a danger to the community or a risk of flight. *Id.*

According to the Automated Case Information on the Executive Office for Immigration Review ("EOIR") website, this case is pending and there are no future hearings for this case. *See* https://acis.eoir.justice.gov/en/ (last visited November 20, 2026).

## II. Discussion

The Petition raises two claims: (1) Petitioner's warrantless arrest without any prearrest escape-risk determination, followed by detention without any of the post-custody process that 8 U.S.C. § 1226(a) and its regulations require, exceeds Respondents' statutory and regulatory authority;

and (2) Petitioner's seizure and continued confinement without notice or a pre-deprivation hearing violate the procedural component of the Fifth Amendment Due Process Clause. Dkt. No. 1 at 11-20.

Along with their Answer, Respondents submitted the Form I-213, which states that on October 9, 2026, an Enforcement and Removal Operations ("ERO") team conducted a targeted enforcement operation to locate an individual Alberto Arce – not Petitioner. Dkt. No. 9-1 at 2. The I-213 further states that an "individual matching the physical appearance and description of ARCE was observed exiting the general area of the residence and entered the passenger side of a black GMC"; thereafter, a vehicle stop was conducted.[1] *Id.* ICE officers requested Petitioner's name and identification and confirmed he had no legal status to allow him to remain the United States. *Id.* at 3. The I-213 further states that a "first-line supervisor authorized the issuance of a Warrant for Arrest of Alien, Form I-200, at 0542." *Id.* Petitioner was then arrested and taken into custody. *Id.* The Form I-213 also states that Petitioner has no criminal history. *Id.*

Respondents argue that Petitioner was never previously detained and his only potential available remedy is a bond hearing under § 1226(a), pursuant to *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). Respondents further argue that to the extent Petitioner has not requested a bond hearing, he has not exhausted his administrative remedies. Dkt. No. 9 at 3. Respondents further request that the Court dispense with a status report or notice of compliance because Petitioner is represented by counsel. *Id.* at 4.

In Petitioner's Reply, he argues that Respondents' Form I-213 for his case repeats Respondents' Form I-213 for his brother nearly line by line and is "proof that no individualized determination of anything was made." Dkt. No. 11 at 2. Petitioner further argues that behind the I-213 is nothing—no

[1] The Form I-213 states that the officers' body-worn cameras were activated.

Warrant (Form I-200), no Notice to Appear (Form I-862), no Notice of Initial Custody Determination (Form I-286), no declaration, and no body-worn-camera footage, though the I-213 itself says the footage exists. *Id.* at 1-6. Petitioner asserts that he is entitled to the same relief as his brother, including the same protection against re-detention. *Id.* at 6-7.

**A. Detention Under 8 U.S.C. § 1226(a)**

Section 1226(a) "sets out the general rule" for "the arrest, detention, and release" of "aliens present in this country" "who are believed to be subject to removal." *Nielsen v. Preap*, 586 U.S. 392, 396–97 (2019). Under Section 1226(a) and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

Regardless of whether the individual is arrested pursuant to a warrant or DHS's warrantless arrest authority, DHS officers conduct an initial custody determination to decide whether to release or detain the person. 8 C.F.R. § 1236.1(c)(8). Unless the person is subject to mandatory detention under 8 U.S.C. § 1226(c) based on their criminal history, DHS has "the discretion either to detain the [noncitizen] or to release him on bond or parole." Nielsen, 586 U.S. at 396. The DHS officer must release the noncitizen if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

After the initial custody determination, the noncitizen may request that an Immigration Judge ("IJ") review the DHS officer's determination at a bond hearing in immigration court. See 8 C.F.R. § 1236.1(d)(1) (permitting a

noncitizen to request amelioration of the conditions of release in front of any immigration judge "after an initial custody determination") (emphasis added); 8 C.F.R. § 1003.19 ("Custody and bond determinations made by the service pursuant to 8 CFR part 1236 may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236.")[2]

"If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). The noncitizen can "appeal an adverse decision to the BIA." Id. (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id.* (citing 8 C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the BIA." *Id.* The noncitizen may also seek judicial review of the immigration courts' bond determination through a habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention

---

[2] DHS utilizes a Notice of Initial Custody Determination, Form I-286, to document its custody determinations. *See* 8 C.F.R. § 236.1(g). The Form I-286 includes "the formal mechanism—a box the detainee may check—to immediately request" that an Immigration Judge ("IJ") review DHS's custody determination at a custody redetermination hearing (i.e., a bond hearing). If the noncitizen checks this box, or otherwise requests a custody redetermination hearing, an IJ will set a hearing in Immigration Court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19; *Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026).

provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1202.

### B. The Constitutional Grounding for § 1226(a) Procedures

The Supreme Court has long recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id.* at 690–92. In the context of immigration detention, "it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (cleaned up). *See also Padilla v. United States Immigr. & Customs Enf't,* 192 F.4th 894, 914 (9th Cir. 2026) (recognizing that "the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth century" and discussing the history of protections against arbitrary detention applied to noncitizens).

Section 1226(a) and its implementing regulations establish procedures to ensure that the Government only detains noncitizens where doing so advances its legitimate interests in preventing danger and mitigating risk of flight. Without such protections, there is an unacceptably high risk that the noncitizen's confinement is not "reasonably related" to a legitimate purpose.

*Zadvydas*, 533 U.S. at 690; *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1085 (N.D. Cal. 2025) ("Noncitizens subject to § 1226(a) therefore have a statutory as well as constitutional interest in remaining out of custody unless they pose a threat to the public or a flight risk.").

The mechanism for making such evaluations is the initial custody review, which ensures that DHS only detains a noncitizen where officers determine that detention is justified on an individualized basis and engages "in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Kelly v. Almodovar*, No. 25-cv-6448-AT, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (quotations omitted). It also "create[s] a record that permits meaningful review of whether the required procedure occurred." *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *5 (E.D. Pa. June 17, 2026) ("A contemporaneous, individualized custody determination [ ] require[s] ICE to explain why detention, rather than release on conditions, is necessary for *this* Petitioner.") (emphasis in original). And it is the "mechanism" by which noncitizens are advised that they can seek review before an IJ and provided an opportunity to request such review by checking a box on the Form I-286. *See Garcia-Maya*, 2026 WL 1965886, at *8.

Absent an initial custody review, a noncitizen may not be aware that they are eligible for a bond hearing or know how to request one. *See Castellanos Franco v. Warden, Adelanto ICE Processing Ctr.*, et al., No. 5:26-cv-05549-MWC-DMK, 2026 WL 2922670, at *4–5 (C.D. Cal. Sept. 29, 2026) ("Respondents' 'failure to provide petitioner with any of § 1226(a)'s 'substantial procedural protections,' . . . including the right to request an initial custody re-determination before an IJ under 8 C.F.R. § 1236.1(d), violated procedural due process.' ") (quoting *Rivas Garcia v. Current or Acting Field Dir.*, No. 1:26-cv-03245-DAD-SCR, 2026 WL 1265937, at *4 (E.D. Cal.

May 8, 2026)). And even when a noncitizen requests a bond hearing before an IJ, it may be weeks or months until the hearing is scheduled. *See generally Trujillo-Hernandez v. Mullin, et al.*, No. 5:26-cv-03282-SP, 2026 WL 2826326, at *5 (C.D. Cal. Sept. 21, 2026).

In short, without an initial custody determination, a person could be confined for a prolonged period without any determination that such a profound deprivation of their liberty is actually justified.

Considering the importance of the procedures available under Section 1226(a) at the outset of an individual's detention, numerous courts have recognized failure to provide an initial custody determination is not only a statutory violation, but also a violation of a noncitizen's due process rights. *Lopez Esteban v. Warden-Facility Adm'r of Nw. Processing Ctr.*, No. 2:26-cv-02548-JHC, 2026 WL 2686824, at *4 (W.D. Wash. Sept. 14, 2026) (quoting *Pastrana-Beltran v. Mullin*, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) and collecting cases). *See also Occeus v. Warden, California City Detention Facility*, No. 1:26-cv-07057-TLN-SCR, 2026 WL 2858725, at *1 (E.D. Cal. Sept. 23, 2026) ("Petitioner was denied statutory and regulatory protections under § 1226(a) and 8 C.F.R. § 1236.1(d) for a period of months in this case, which constitutes a separate procedural due process violation."); *Angulo-Barbosa v. Blanche, et al.*, No. 2:26-cv-02102-RFB-BNW, 2026 WL 2676815, at *2 (D. Nev. Sept. 11, 2026) ("the Court finds Petitioner's detention without notice of an initial custody determination violates Petitioner's right to substantive and procedural due process"); *Rodriguez v. Knight*, No. 1:26-cv-00505-BLW, 2026 WL 2641448, at *3 (D. Idaho Sept. 8, 2026) ("the Government violated his due process rights by denying him the individualized custody determination required under § 1226(a)"); *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G. v. Genalo*, No. 26-cv-4521-AT,

2026 WL 1724325, at *4 (S.D.N.Y. June 15, 2026); *Curimilma Quille v. Blanche*, No. 26-cv-2818-HG, 2026 WL 1453889, at *4 (E.D.N.Y. May 22, 2026).

**C. Respondents' Failure to Provide Initial Custody Review**

Petitioner alleges, and Respondents do not dispute, that when Petitioner was taken into custody, there was no initial finding that he was a flight risk or a danger. Petitioner was provided no process or opportunity to be heard prior to his detention. Petition ¶¶ 35-36; Dkt. No. 11, Traverse at 2, 5-6. Respondents proffer no evidence or argument that Petitioner received an individualized custody determination, and they did not submit a Notice of Initial Custody Determination, Form I-286. The Court therefore concludes that ICE failed to provide Petitioner with an initial custody determination at the outset of detention.

**D. Remedy**

The Court must determine, then, the proper remedy for the failure to provide the initial custody determination. Respondents argue that under Section 1226(a), Petitioner appears to be entitled to request and receive an initial bond hearing before an immigration judge pursuant to *Rodriguez Vazquez*. Dkt. No. 9 at 2. However, as many of the courts to address this issue have concluded, the "failure to comply with the procedures set forth by 8 U.S.C. § 1226(a) and its implementing regulations during a petitioner's initial detention renders that detention unlawful and that unlawfulness cannot be cured through belated compliance with statutory requirements." *Zurita Navarro*, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G.,* 2026 WL 1724325, at *4 ("Because J.T.G.'s detention was unlawful from the outset, the government cannot cure its procedural failures by providing a custody determination three weeks later."). *See also Lopez Esteban*, 2026 WL 2686824, at *4 (collecting cases). "The suggestion that government agents may sweep

up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment." *Gonzalez v. Joyce*, No. 25-cv-8250-AT, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025).

Petitioner has now been confined since October without any determination that this lengthy detention is warranted. A bond hearing belatedly conducted at some point in the future is "'no substitute'" for initial custody determination that would have established "a lawful basis for detention in the first instance." *Garcia-Maya*, 2026 WL 1965886, at *8 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)).

Because Petitioner did not receive an initial custody review, the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." *Reyes v. Santacruz, Jr., et al.*, No. 26-cv-3394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026). The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

## III. Order

For the foregoing reasons, the Petition is GRANTED as to Count One, and the remaining count is dismissed without prejudice.

Petitioner Juan Reyes Santos (A# 222-570-779) is **ordered released** within 24 hours of this Order.

This Order does not provide Petitioner with blanket immunity from future detention – that relief is likely beyond the Court's jurisdiction – but any future enforcement actions after release must comply with Due Process requirements.

At the time of release, Respondents are ordered to return to Petitioner any of Petitioner's personal belongings that were seized from him, including all identification, work authorization, or other official documents.

**Respondents are further ordered** to file, within three days of Petitioner's release, a status report confirming Petitioner's release.

IT IS SO ORDERED.

DATED: November 20, 2026

Patricia Donahue
United States Magistrate Judge